# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00617-CV

---

**C. C., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 146TH DISTRICT COURT OF BELL COUNTY**
**NO. 313,975-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING**

---

### CONCURRING AND DISSENTING OPINION

I respectfully dissent in part from the Court's holding. I concur that the evidence before the associate judge in this case is legally sufficient to find that termination of Mother's parent-child relationship is in the best interest of the child, but I dissent from the Court's holding that the evidence is factually insufficient to find in the best interest of the child. From the record before the Court, I believe the associate judge could have reasonably formed a firm conviction that it was in the child's best interest that Mother's parent-child relationship be terminated. I would affirm the trial court's final order of termination of Mother's parent-child relationship.

All termination cases are tragic, but the present case is tragic above and beyond many termination suits in that a severely disabled, special-needs child's future hangs in the balance. The child is non-verbal and not able to protect herself. The child at age fifteen at conclusion of the proceedings below is close to aging out of the child-welfare system and is

in greater urgency than many children who pass through termination proceedings. The best interests inquiry is child-centered. The question at the trial court and now on appeal is the point at which reunification of parent and child passes the point of no return. In this case, it seemed that it was not until after the trial began.

The Department began Family Based Safety Services December 19, 2019, after receiving neglectful-supervision allegations, including that Mother was absent from her home and child, Mother was using methamphetamine, Mother's former boyfriend (and current roommate) was watching the child while Mother was absent, and Mother had fallen asleep while driving with the child as a passenger. Mother was ordered to participate in individual therapy at least two times per month, complete parenting classes, and participate in drug testing. A few days after the services began, a Department worker attempted to contact Mother, but found only the child at home with the former boyfriend/roommate.

After Mother's January 16, 2020 positive methamphetamine drug test and Mother's admission to smoking methamphetamine at 2:30 a.m. on or about January 21, 2020, when she left the residence and child to smoke at a friend's home in Temple, Texas, the Department filed its January 23 petition seeking to appoint the Department as managing conservator and find that appointment of either parent as managing conservator would significantly impair the child's physical health and emotional development. The Department sought approximately fourteen different temporary orders but did not request termination of the parent-child relationship until it filed its amended petition November 17, 2020, seeking to terminate Mother's parental rights and alleging six grounds.

The trial court called this case for trial March 31, 2021, after extending the court's jurisdiction 180 days for Mother to complete a rehabilitation program. The court then reset the

2

case three times for various reasons, including to allow Mother to complete a segmented hair drug test that she never took, and because a Department witness was unavailable at another setting. The final hearing occurred July 21.

The Department called Jessica Jones, the case's conservatorship worker. Jones testified that the initial removal had occurred after a Family Based Safety Services case revealed that Mother was exhibiting continued substance abuse and testing positive for methamphetamine. Regarding Della's father, Jones testified that he was incarcerated at the time of removal and had an estimated 2032 release date. Jones testified that as of July 5, Mother was homeless, Jones did not know where Mother was living or staying, Mother was not testing consistently but had a positive drug test for methamphetamine May 21, and Mother had not successfully completed her individual therapy and was discharged from two therapists for not taking it seriously and not consistently attending. Mother had, however, completed parenting classes and provided items for Della. Jones testified that in-person visits stopped after the May 21 positive drug test and had not resumed because Mother had not tested since May 28, 2021, when Mother mistakenly showed up to test after she missed her testing day on May 24. Jones stated that the Department's recommendation was termination of parental rights, which was in Della's best interest; that Mother was denying a potential drug relapse as of May 2021; and that Mother did not have safe, stable housing as of July 5, 2021. She testified that the Department's plans were to send out referrals for potential adoptive homes for Della and "from my understanding there have been possible homes for her in the past," and she added, "hopefully, we would be able to work with the facility where she's currently placed and the child placement unit to hopefully find her a long-term resource who can meet her needs." In response to the child's attorney ad litem's

questioning, Jones testified that by termination the Department hoped "to find permanency and an adoptive resource for Della" and "prior searches" had indicated "possible returns for her."

Mother testified that Jones's testimony "sounds really bad" but that she did not agree with the statement that she is a "drug addict" but, rather, has "had some very unfortunate luck, really, and it just has crippled me right at the moment." She went on to say, "I don't have a reliable ride and a reliable place to stay right now, and work is difficult too, right now," and that her car had been repossessed. The Department's attorney asked Mother when she last used methamphetamine, to which Mother replied, "It has been 15, 16 weeks." Mother acknowledged that her May 21 drug test contradicted that statement, saying, "I don't know how it was a positive, but I'll take it as a positive."

The guardian ad litem acknowledged that Mother had not carried out orders from the court, that the court "told [Mother] to go hair test and she didn't," and that she "totally get[s] why the Department is asking what they're asking." She further stated that, but for the fact that an adoption placement for Della had not been found, she "would jump on the termination train." The guardian ad litem continued, "in the year and a half that we've had this case [Mother's] really not made any progress." The attorney ad litem did not recommend termination as being in the child's best interest, notwithstanding the father's being in prison until 2032. He argued that "the chances of this child being able to be adopted are virtually zero" and opined that termination would "leave this child a ward of the state . . . with no possibility of an adoption."

An exhibit before the trial court showed that Mother had a neglectful-supervision case in March 2010 that resulted in termination of her parental rights to her two six-month old twins after two older siblings were playing in a dangerous area without adult supervision and Mother tested positive for cocaine and marijuana while Father broke a window and caused

4

broken glass to fall on a four-year-old child. Another exhibit showed that in September 2019, Mother was positive for methamphetamine and amphetamine, and she admitted to using an ecstasy pill the day before she met with a Department investigator. Mother reported she started using methamphetamine in March 2019, and she took an ecstasy pill every day for forty-five days in a row.

After being court-ordered to submit to random weekly drug testing, Mother had approximately twenty-eight missed drug screens which the Department deemed "missed positives—one positive test for methamphetamine, one positive test for amphetamine, four positive tests for methamphetamine and amphetamine and one positive hair follicle for amphetamine. Mother's March 10, 2020 psychological evaluation diagnosed her with Amphetamine-type Substance Use Disorder, Severe; Post-Traumatic Stress Disorder; Adjustment Disorder with Mixed Disturbance of Emotions and Conduct; Cannabis Use Disorder, Moderate, in sustained remission; and Alcohol Use Disorder, Severe, in sustained remission. Mother underwent a comprehensive psychiatric evaluation March 12, 2020, which diagnosed her with (1) Methamphetamine use disorder, severe, reportedly in early remission and (2) Adjustment Disorder with depression and anxiety. The psychiatrist stated, "Certainly the possibility of ongoing, covert amphetamine-like substance use disorder remains in the differential diagnosis, as synthetic bath salts would not be revealed by routine urine drug testing."

Shannen Wilson, a Department conservatorship worker, testified that Mother admitted to her on January 15, 2020, during a scheduled home visit, that about two and one-half weeks earlier she had used methamphetamine. Mother shared her residence with Joseph Roberts, her former boyfriend and present-day roommate, who told Wilson that he was Della's primary caretaker. Mother told Wilson that she drove customers as an Uber driver while under the

5

influence of methamphetamine. In an unannounced home visit January 21, 2020, Mother told Wilson that she had left her residence to smoke methamphetamine at a friend's home. Roberts had been unaware of Mother's absence or drug use. Mother also admitted to using drugs the day before the visit.

Della had medical needs that "must be addressed and had not been by her mother." Della had a cyst on the back of her head that was found in 2012 and was last checked in 2017, but Mother had not had it checked since. Della reportedly needed corrective eyeglasses, but Mother does not believe that she needs them, and Della has a possible curvature of her spine forming that Mother had identified but for which she had not scheduled an appointment. Della has been reportedly left by Mother in the care of a non-related household member.

The Supreme Court of Texas has held that in factual-sufficiency review of termination findings, the standard is "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). However, the Court also noted that "[a]n appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt," and that "[w]hile parental rights are of constitutional magnitude, they are not absolute." *Id.* at 26. Children's emotional and physical interests are not to be sacrificed merely to preserve parental rights. *Id.*

The supreme court stated in *C.H.* that despite "the court of appeals' conclusion that the foster family's failure to testify 'unnecessarily infers that they were not considering or intending to adopt C.H,'" the "Family Code provides that a court may appoint the Department as a child's managing conservator upon termination." *Id.* at 28 (citing Tex. Fam. Code § 161.207). The supreme court continued,

> Evidence about placement plans and adoption are, of course, relevant to best interest. However, the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located. Instead, the inquiry is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest—even if the agency is unable to identify with precision the child's future home environment.

*Id.* Among the best-interest factors, some considerations may be relevant to the child's best interest, but not all must be proved, and the list is not exhaustive as a predicate to termination of the parent-child relationship. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27.

Many courts have held that a parent's decision to possess and use narcotics condemns the parent's child to a life of uncertainty and possible loss. *See, e.g.*, *L.D.-C. v. Texas Dep't of Fam. & Protective Servs.*, Nos. 03-18-00115-CV & 03-18-00116-CV, 2018 WL 2976339, at *2 (Tex. App.—Austin June 14, 2018, no pet.) (mem. op.). The parent risks arrest, incarceration, and criminal prosecution for drug possession and subjects the child to risk of neglect and endangerment. The fact that the child does not suffer physical harm does not negate the risk and danger.

In the present case, the guardian ad litem and attorney ad litem seemed to base their opinions and recommendations on the possible adoptability of the child. The trial court had evidence before it on adoptability that it could have chosen to accept and believe. Caselaw also

7

tells us that this sole factor is not dispositive on best interest or necessarily overriding of other best-interest factors that the court considers. The trial court had discretion and appears to have given weight to Mother's continued use of methamphetamine, even after the termination trial began. The trial court appeared to have attempted to avoid termination of Mother's parent-child relationship until it became apparent to the trial court that Mother's methamphetamine problem ran the course of this case and was not going to end even after a rehabilitation program and the beginning of trial.

I would, accordingly, affirm the trial court's termination order.[1]

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Smith

Filed: May 20, 2022

---

[1] Because neither party raised the issue of the decree's provisions allowing Mother continued visitation, the issue is not before us.